IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

Vs.                                                    No. 07-40124-01-SAC

LENARD CHAUNCY DIXON,

Defendant.

**MEMORANDUM AND ORDER**

This Hobbs Act case comes before the court on the following motions
filed by the defendant Lenard Dixon: motion to suppress evidence (Dk. 19);
motion to dismiss counts 1 through 15 (Dk. 20); motion to suppress
statements (Dk. 21); motion to dismiss count 16 (Dk. 22); motion to strike
surplusage from the indictment (Dk.23);  motion to disclose expert
testimony (Dk. 24); motion for notice of evidence (Dk. 26); and motion to
sever counts (Dk. 27). The government has filed a consolidated response
opposing some, but not all, motions (Dk. 32). The court took the motions
under advisement after the evidentiary hearing held on March 19, 2008,
and is now ready to rule.

**Charges**

Defendant is charged with 16 counts arising from five different armed robberies which occurred on five different dates. As to each of the five events, defendant is charged with Hobbs Act robbery, use of a firearm in connection with a crime of violence and in the alternative, possession of a firearm in connection with a crime of violence. (Counts 1-15).  Count 16 charges defendant with being a felon in possession of a firearm.

**Facts**

The facts of this case are not in dispute. On August 24, 2007, the defendant was arrested at the Gonzalez Liquor Store after the owners of the store and nearby bystanders foiled his alleged attempted robbery and held him until police arrived. The Topeka Police Department believed the defendant might be responsible for other robberies that had occurred on August 5th at Dollar General, on August 6th and 13th at Tommy Meier's Liquor Store, and on August 22nd at Wood Oil. At the time of his arrest the defendant was a resident at the Grossman Community Center Half-way House. On the same day the defendant was arrested, Detective Hazim of the Topeka Police Department read defendant his Miranda rights and attempted to question him. Defendant indicated that he understood his

rights but did not wish to speak with the officer. Detective Hazim honored the defendant's right to remain silent and did not ask him any more questions.

On August 27, Detective Hazim presented Judge Braun of the District Court of Shawnee County a search warrant for some of defendant's possessions at the Grossman Community Center half-way House, supported by a probable cause affidavit. He testified that he presented three original affidavits, and two original search warrants to Judge Braun. Detective Hazim met with Judge Braun personally, presented the papers, signed the affidavit, and thought that the judge signed the search warrants and affidavits.

Before the search, Grossman Center employees had learned of defendant's arrest, had seized the defendant's possessions, had boxed them up, and had removed them from defendant's room. Detective Hazim thereafter executed the search warrant, taking possession of a light blue shirt, as he noted on an unsigned search warrant which he left at the Grossman Center immediately after the search, Def. Exh. 401. As a condition of defendant's residence at the Grossman Center, defendant had signed a form acknowledging that "all residents assigned to the facility are

3

subject to a physical search of their person or property at any time with or without cause." Gvmt Exh. 1.

Detective Hazim testified that it was not until the day after the search, when he was reviewing his papers, that he realized Judge Braun had neglected to sign the search warrant. He then took the unsigned search warrant back to Judge Braun, who signed it and dated it with the previous day's date.

On August 29, 2007, when defendant was still in custody, Detective McKay of the Shawnee County Sheriff's Department met with the defendant to ask about his participation in a robbery at Wood Oil. The defendant waived his Miranda rights and spoke with Detective McKay, denying any involvement in that robbery.

**Motion to Dismiss Count 16 for Lack of Subject Matter Jurisdiction** (Dk. 22).

This motion claims that 18 U.S.C. § 922(g), the felon in possession of a weapon statute, is facially unconstitutional because Congress exceeded its constitutional authority when enacting the statute and is unconstitutional as applied because the nexus between the weapon and interstate commerce is deficient. The defendant recognizes adverse Tenth Circuit

precedent on this issue and lodges this motion as a standing objection.

In refuting arguments identical to those raised by this defendant, the Tenth Circuit has repeatedly held that 18 U.S.C. § 922(g) is facially constitutional and that a *de minimis* nexus between the weapon and interstate commerce is sufficient . *See United States v. Patton*, 451 F.3d 615, 634 (10th Cir. 2006); *United States v. Dorris*, 236 F.3d 582, 586 (10th Cir. 2000); *United States v. Farnsworth*, 92 F.3d 1001, 1006-7 (10th Cir. 1996); *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir. 1995); *United States v. Gordon*, No. 07-3225, 2-3 (10th Cir. 2008).  Accordingly, proof that the firearm was manufactured in a state other than Kansas and was possessed by this defendant in Kansas will suffice to prove the interstate commerce element upon which this court's subject matter jurisdiction is based. This motion is denied.

**Motion to Dismiss Counts 1 Through 15 as Unconstitutional** (Dk. 20).

The Hobbs Act provides federal courts with subject matter jurisdiction over robberies because robbery naturally adversely affects interstate commerce**.** 18 U.S.C. § 1951 (2008). This motion claims solely that the defendant's alleged actions alone must substantially and actually impact interstate commerce in order for the court to possess subject matter

5

jurisdiction. The defendant recognizes contrary Tenth Circuit precedent and lodges this motion as a standing objection.

The Tenth Circuit, in addressing identical arguments, has held that because the Hobbs Act "regulates activities that in aggregate have a substantial affect on interstate commerce," individual acts by a defendant do not need to substantially impact interstate commerce. *United States v. Morris*, 247 F.3d 1080, 1087 (10th Cir. 2001); *United States v. Bolton*, 68 F.3d 396, 399 (10th Cir. 1995). Furthermore, the Tenth Circuit requires only that the defendant's actions potentially affect interstate commerce, and does not require that actual interference be shown. *United States v. Wiseman*, 172 F.3d 1196, 1216 (10th Cir. 1999). Accordingly, this motion is denied.

**Motion to Suppress Evidence from Search** (Dk. 19).

This motion contends that the search warrant was invalid because Judge Braun did not sign it before the search occurred, thus the fruits of the search must be suppressed. The government counters that the defendant did not possess a reasonable expectation of privacy in his belongings at the Grossman Center half-way house, and that the search was reasonable under the Fourth Amendment. The court addresses the

6

government's contentions first in light of traditional standards of reasonableness by assessing, on the one hand, the degree to which the search intrudes upon an individual's privacy and, on the other, the degree to which the search is needed "for the promotion of legitimate governmental interests." *Virginia v. Moore*, slip op __ U.S. __ (No. 06-1082 April 23, 2008) (citations omitted).

A defendant may challenge a search or seizure under the Fourth Amendment only if the defendant can demonstrate that "his own constitutional rights have been violated."  *United States v. Rubio-Rivera,* 917 F.2d 1271, 1274 (10th Cir. 1990). In order for a defendant to claim the protection of the Fourth Amendment, the defendant must "demonstrate by his conduct a subjective expectation of privacy" and show that "society is prepared to recognize that expectation as reasonable." *United States. v. Conway*, 73 F.3d 975, 979 (10th Cir. 1995); *see Minnesota v. Carter*, 525 U.S. 83, 88 (1998). It is the defendant's evidentiary burden to demonstrate "a subjective expectation of privacy that society is prepared to recognize as reasonable." *Conway*, 73 F.3d at 979.

A "privacy continuum" applies to offenders moving through the criminal justice system: 1) prisoners in custody, whose privacy interests

7

"are extinguished by the judgments placing them in custody"; 2) convicted felons on conditional release (such as parole, probation or supervised release) who are not entitled to the full panoply of rights and protections possessed by the general public; 3) felons whose terms have expired, but whose established criminality may be the basis of legal obligations that differ from those of the general population; and 4) those who have never been convicted of a felony. *Banks v. United States*, 490 F.3d 1178, 1185 (10th Cir. 2007), quoting *Green v. Berge*, 354 F.3d 675, 679-81 (7th Cir. 2004) (Easterbrook, J., concurring).

Prisoners in full custody have no Fourth Amendment protection against unreasonable searches within the confines of their prison cells. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984). Similarly, parolees subject to a mandatory search condition have no reasonable expectation of privacy in their belongings. *Samson v. California*, 547 U.S. 843, 853, 126 S.Ct. 2193, 2200 (2006). This defendant resided in a halfway house, which is an established variation on imprisonment. A halfway house is a community-based residential facility for offenders who have been sentenced to a term of incarceration, and are serving a portion of their sentence under community supervision. This facility received persons from "the United

8

States Department of Justice Bureau of Prisons, United States Probation Office, United States Pre-Trial Services and direct court commitments." Def. Exh. 403, p. 3.

No evidence was presented that the defendant had been released on supervision at the time of the challenged search, thus the only evidence is that the defendant remained in the physical and the legal custody of the BOP at that time. This defendant was also subject to a mandatory search condition which required him to submit to a "physical search of [his] person and [his] property at any time with or without cause." Def. Exh. 403, p. 14, Sec. 208. Notice of this search condition was clearly expressed to the defendant, who signed an order submitting to the condition and thus was unambiguously aware of it. Examining the totality of the circumstances pertaining to petitioner's status as a halfway house resident in custody, including the plain terms of the search condition, the court concludes that defendant did not have an expectation of privacy in his boxed possessions that society would recognize as legitimate.

The State's interests, by contrast, are substantial. The State has an "overwhelming interest" in governing or supervising residents in custody at halfway houses because such persons are more likely to commit future

criminal offenses. *Cf Pennsylvania Bd. of Probation and Parole v. Scott*, 524 U.S. 357, 365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). The State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among those serving their sentences at halfway houses warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment. *See Samson v. California*, 547 U.S. 843, 853, 126 S.Ct. 2193, 2200 (2006). The State's ability to conduct suspicionless searches of residents in halfway houses serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the residents' reintegration into productive society. *See Samson*, 547 U.S. at 854. Under these circumstances, the balancing of private and public interests is not in doubt. This motion shall therefore be denied.

**Motion to Suppress Statements**.

The defendant's motion to suppress statements claims that the defendant's Fifth Amendment rights were violated when the defendant was questioned after he had invoked his right to remain silent.

### Facts

Both parties agree that on August 24, 2007, Topeka Police arrested the defendant for an attempted robbery that occurred at Gonzales Liquor.

At the police station, Detective Hazim of the Topeka Police Department "Mirandized" the defendant. The defendant invoked his right to remain silent, which the officer honored. Five days later, on August 29, 2007, Detective McKay of the Shawnee County Sheriff's department met with the defendant at the Shawnee County Jail. Detective McKay read the defendant his Miranda rights again and the defendant waived them, agreeing to speak with the officer and denying any involvement in the robbery discussed.

### Analysis

Both parties agree that the government may re-initiate questioning after invoking his *Miranda* rights if the defendant's right to terminate questioning was "scrupulously honored."  *Michigan v. Mosley*, 423 U.S. 96, 103-04.  The Tenth Circuit in dicta noted that police may only reinitiate questioning if the four factors articulated in *Mosley* are met: (1) questioning ceased at the time the defendant utilized his right to remain silent, (2) a substantial time interval passed before the next interrogation, (3) the police provided the defendant with a fresh set of Miranda warnings, and (4) the second interrogation's subject matter is different than the first. *United States v. Alexander*, 447 F.3d 1290, 1294 (10th Cir. 2006) (citing *Mosley*,

11

423 U.S. at 105-06).

This Court has previously noted that it is unlikely the Tenth Circuit would require all four factors to be stringently applied in every case. *United States v. Orduna-Martinez*, 491 F.Supp.2d 1021, 1030-32 (D.Kan. 2007) (citing a variety of Tenth Circuit cases were the court did not scrupulously follow the four factors articulated in *Alexander*). In *Orduna-Martinez*, this Court followed the more "flexible approach" articulated in and *United States v. Hsu*, 852 F.2d 407, 410 (9th Cir. 1988). *See Orduna-Martinez*, 491 F.Supp.2d at 1032.

In this case, the first three factors articulated in *Mosely* were squarely met. Questioning ceased after the defendant invoked his right, five days passed between interrogations, and a fresh set of *Miranda* warnings was provided. *See Mosley*, 423 U.S. at 105-06. The sole issue is whether the second interrogation's subject matter was different than the first. The defendant claims the questioning by Detective McKay in the second interrogation was related to the questioning by Detective Hazim because both officers asked about numerous armed robberies. The government claims the questions asked by Detective McKay focused on a different robbery because Detective McKay is with the Shawnee County Sheriff's

12

Department and his jurisdiction does not extend to the robberies in Topeka, which were being investigated by Detective Hazim of theTopeka Police Department. Similarly, Detective Hazim's interest only extended to those robberies within his jurisdiction - those which occurred within the city limits of the City of Topeka, Kansas.

Detective Hazim testified that the Topeka Police Department investigated the robberies that occurred in the city, and the Sheriff's Department investigated the robberies that occurred in the county. Because the Wood Oil robbery was not in the city, he did not investigate it. He did not send Sheriffs deputies to interview the defendant, but knew that the Shawnee County Sheriff's Office had an ongoing robbery investigation. At some point between the 24th and the 29th, Detective Hazim talked to Detective Phil McKay, explained that he had a suspect that was taken into custody regarding Gonzales Liquor robbery, and told him who that person was. He believes he told Detective McKay that he attempted to interview the defendant, but that the defendant invoked his right to remain silent.

Sheriff's Deputy McKay confirmed that he was not working with Detective Hazim, but had received some information from him, specifically, that the individual that the Topeka Police Department had apprehended

13

matched the description of a suspect in the robbery at Wood Oil that he was investigating. His report does not mention that Detective Hazim had Mirandized the defendant, and when he  Mirandized the defendant on August 29th, he believed that was the first time defendant had been Mirandized. Deputy McKay was not interested in the Gonzales Liquor Store robbery or in in the Meier Brothers Liquor Store robberies because they occurred in the city limits. Rather, his "singular focus" was in the Wood Oil robbery which he was actually investigating, which is in Shawnee County, and he limited his questions to defendant to that event. He testified that he "probably" told the defendant that he was a suspect in numerous other armed robberies in Topeka, and showed defendant photographs that Detective Hazim had given him of the suspects in the Meier's and the Dollar General robberies in an attempt to solicit defendant's side of the story regarding his involvement in the Wood Oil robbery. Deputy McKay testified that these were photographs of the defendant. Although he never told defendant that he did not want any information about the Topeka robberies, he believed he made it clear to defendant that his sole interest was in the Wood Oil robbery.

Both Detective Hazim and Deputy McKay testified that no threats or

14

promises were made to defendant, that no physical force or harassment was used, and that no other indicia of coercion were present.

Deputy Vaughn then testified that Deputy McKay indicated to him that Detective Hazim had previously attempted to interviewed Mr. Dixon but that defendant had, in fact, invoked his rights, contradicting Deputy McKay's testimony in that respect. Having viewed the witnesses and weighed their credibility, the court finds this discrepancy to flow from Deputy McKay's misrecollection, rather than from some effort to hide some coercion of the defendant to speak after he had refused to do so.

Regardless of whether the court strictly applies the fourth *Mosley* factor,or follows a more flexible approach, it finds no violation of defendant's Fifth Amendment rights. The first questioning related to robberies occurring in the city limits of the City of Topeka. The second questioning related to one robbery outside the city limits. For reasons compelled by very clear and real jurisdictional restraints, each officer limited his focus to robberies in his own jurisdiction. The subject matter of the two interrogations, or intended interrogations, was different. Although some mention of the robbery or robberies outside the questioning officer's

jurisdiction may have occurred,[1] the court has no hesitation in finding that no attempt was made by either officer to improperly induce or coerce the defendant to speak and that based upon all the circumstances, defendant's questioning after he had invoked his right to remain to remain silent did not violate defendant's Fifth Amendment rights.

**Motion to Sever Counts (Dk. 27)**.

Defendant is charged with 16 counts arising from five different armed robberies which occurred on five different dates. The focus of his defense will be to challenge identification. Defendant has moved to sever the counts, alleging they are unfairly and prejudicially joined. At the hearing, defense counsel clarified that defendant is seeking three separate trials: one for counts 1-9, which arise from two separate robberies at Tommy Meier's Liquor Store and a robbery at Dollar General; one for counts 10-12, related to the Wood Oil robbery on 8/22, in which a clerk and a customer were taken into the back room to try to open the safe and were left there by two robbers; and one for counts 13-16, related to the Gonzalez Liquor Store robbery on 8/24, in which the defendant was tackled and

---

[1]When Detective Hazim attempted to question the defendant, he concluded by saying, "I have a bunch of other cases as well I'll be working up on you." Govmt's Exh. 2 (substitute exhibit).

16

seized at the scene.

Defendant alleges prejudicial joinder of counts, although he concedes the counts were properly joined under Federal Rule of Criminal Procedure 8(a) (allowing for the joinder of two or more offenses if they "are of the same or similar character"). *See United States v. Lindsey*, 782 F.2d 116 (8th Cir.1986) (per curiam). Defendant contends that at least seven eyewitnesses will give differing descriptions of the robber, confusing the jury and lessening the government's burden of proof. Defendant also alleges he will suffer prejudice if the counts are not severed because the jury will cumulate the evidence against him on the stronger counts (counts 13-16, in which defendant was caught red-handed at the scene) in order to convict him on the similar other counts, for which the evidence is weaker (all other counts, based on photo identification of the defendant ,or his possession of a matching shirt).

### General law

The district court may sever counts which are properly joined if it appears the defendant is prejudiced by their joinder. Fed.R.Crim.P. 14. The decision whether to sever counts as prejudicial rests in the sound discretion of the trial judge. *United States v. Muniz*, 1 F.3d 1018, 1023 (10th

17

Cir.1993). Defendant bears the heavy burden of showing real prejudice from joinder. *Muniz*, 1 F.3d at 1023. In establishing real prejudice, the defendant must "demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials." *United States v. Parra*, 2 F.3d 1058, 1063 (10th Cir.1993), *cert. denied*, 510 U.S. 1026, 114 S.Ct. 639, 126 L.Ed.2d 597 (1993).

The court finds that defendant has not made a strong enough showing of prejudice to warrant severance. The counts are separate and distinct in time, place, and manner of offense, and different witnesses and evidence will be presented on each count. The evidence which the court anticipates will be presented at trial does not appear to be too confusing or unfairly overlapping, and the case for each count is sufficiently strong to convince the court that the government is not attempting to strengthen a weak case by joining it with a strong case.

Defendant also hints at an infringement of his Fifth Amendment right not to testify, alleging that prejudice can accrue from the pressure a joinder places on a defendant's right to testify. Defendant admits that "he cannot, at this point, state unequivocally whether he will testify" but "it would be prudent to testify in the weaker cases, and less so in the latter." Dk. 27, p.

18

6. This conclusory allegation, without more, is simply not enough to warrant severance. *United States v. Utley*, 62 Fed.Appx. 833, 836, 2003 WL 257303, 2 (10th Cir.2003) (same, where defendant only asserted conclusorily that he "may wish to testify at trial as to one or more counts, but not as to all").

The Tenth Circuit sets a demanding standard for severance of counts due to Fifth Amendment prejudice, holding that no need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.

> A defendant who wishes to remain silent on some counts and testify on other counts is not entitled to a severance under Fed.R.Crim.P. 14 without " 'a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other.' " *United States v. Martin*, 18 F.3d 1515, 1518-19 (10th Cir.1994) (quoting *Valentine*, 706 F.2d at 291). In making such a showing, the defendant must present enough information-regarding the nature of the testimony that he wishes to give on one count and his reasons for not wishing to testify on the other-to satisfy the court that the claim of prejudice is genuine and to enable it to intelligently weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying. Id. (internal quotation marks omitted).

*United States v. Utley*, 62 Fed.Appx. 833, 836, 2003 WL 257303, 2 (10th Cir.2003) (finding no prejudice from joinder where "[t]he offenses took

place on different dates at different locations, and different witnesses and evidence were presented on each count.")

The court also notes the government's assertion that severance would be futile because it intends to admit evidence of all five charged robberies, as well as evidence of the prior crimes (carjacking), in each trial either as intrinsic evidence or under Rule 404(b).  Although the 404(b) issue is not ripe, the court preliminarily notes that the government will likely be able to use all the charged robberies as intrinsic or 404(b) evidence. *See United States v. LaFlora*,146 Fed.Appx. 973, 2005 WL 2093039 (10th Cir. 2005) (evidence of defendant's prior two bank robberies was admissible to show identity because modus operandi for each robbery was similar and events were close in time - three months); *United States  v. Zamora*, 222 F.3d 756 (10th Cir. 2000) ("other crimes" evidence that defendant robbed restaurant only hours after failed bank robbery attempt was admissible); *United States v. Gutierrez*, 696 F.2d 753 (10th Cir. 1982) (evidence of bank robbery five weeks earlier was admissible as quite similar to crime charged - defendant in both instances drove getaway car and used her children as cover). The prior felonies, however, relate to a carjacking in 1998, are not intrinsic evidence and are probably not

sufficiently similar to the five charged robberies to be admissible under 404(b), given the lack of geographic and temporal proximity and lack of similar physical elements. For all the reasons stated above, defendant's motion to sever counts shall be denied.

**Other motions**.

Defendant has filed several other motions, namely a motion for notice of evidence (Dk. 26), a motion to disclose expert testimony (Dk. 24), and a motion to strike surplusage (Dk. 23). The court has reviewed these motions. Based upon the government's responses and the statements of counsel at the hearing, the court finds these motions to be moot. In the event discovery type issues remain or arise in the future, the parties shall file an appropriate motion no later than three weeks prior to trial.

IT IS THEREFORE ORDERED that defendant's motion to dismiss counts one through fifteen as unconstitutional (Dk. 20) is denied; that defendant's motion to dismiss count sixteen as unconstitutional (Dk. 22) is denied; that defendant's motion to suppress evidence (Dk. 19) is denied; that defendant's motion to suppress statements (Dk. 21) is denied; and that defendant's motion to sever counts (Dk. 27) is denied.

IT IS FURTHER ORDERED that the following motions are denied as

moot: defendant's motion to strike surplusage from the indictment (Dk.23);

defendant's motion to disclose expert testimony (Dk. 24); and defendant's

motion for notice of evidence (Dk. 26).

Dated this 24th day of April, 2008.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge