# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS



FILED

OCT 31 2014

Clerk, U.S. District Court
By: _____ Deputy Clerk

UNITED STATES OF AMERICA, )
)
    Plaintiff/Respondent, )
)
v. )  No. 07-40124-JAR
)
LENARD DIXON, )
)
    Defendant/Petitioner. )

## MOTION UNDER FRCP 60(B) and FRCrP 52(B)

Comes now the Defendant- Petitioner, Lenard Dixon, *pro se*, and files this Motion for relief under FRCP 60(B)(1) and (3) and FRCrP 52(B) and says:

As correctly noted, Petitioner entered a guilty plea to counts 1, 4, 7, 8, 11 and 14 of the Superseding Indictment charging him with violating 18 U.S.C. 1951 (commonly known as the Hobbs Act) and 18 U.S.C. 922(g)(6), Felon in Possession of a Firearm (Plea Hearing TR. Doc. 98).

On December 14, 2009, the district court sentenced Petitioner to an executed term of 420 months or 35 years in the custody of the Bureau of Prisons. On Counts 1, 4, 7, 8 and 11, Petitioner was sentenced to 84 months imprisonment with each Count to be served consecutively to each other. On Count 14, Petitioner was sentenced to 120 months to be served concurrently with the term of imprisonment imposed in Counts 1, 4, 7, 8 and 11.

1

The Petitioner now raises claims under FRCP 60(B)(1) mistake and (3) fraud, to wit:

(1) The court failed to grant an evidentiary hearing, assuming that Petitioner could not present evidence on his ineffective assistance of counsel claim in the denial of his §2255 Motion to Vacate, Set Aside or Correct Sentence. If the court would have granted this hearing, then the attorney could have and would have sworn under oath that the oral agreement occurred between counsel and prosecuting attorney. *Padilla v. Kentucky*, 559 U.S. 130 (2010) made clear that "the negotiation of a plea bargain is a critical stage" for ineffective-assistance purposes and rejected the argument made by the state that a knowing and voluntary plea supersedes defense counsel's errors. It also goes on to note, plea bargains have become so central to today's criminal justice system that defense counsel must meet responsibilities in the plea bargaining process to render the adequate assistance of counsel that the Sixth Amendment requires at critical states of the criminal process. See *Missouri v. Frye*, 132 S. Ct. 1399 (2012) (concluding defense counsel has a "duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."

(2)    Counsel for the record Maeanie S. Morgan admitted to giving

Petitioner flawed advice in a letter which rendered the plea not knowing and voluntary. A plea agreement can benefit both parties. In order that these benefits can be realized, however, criminal defendants require effective counsel during plea negotiations. "Anything less….might deny a defendant effective representation by counsel at the only stage when legal aid and advice would help him." *Spano v. New York*, 360 U.S. 315, 326 (1959). Here, the attorney was constitutionally required to bring the term so the plea offer to the court's attention. *Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012)(concluding ineffective assistance during plea bargaining is not cured by a subsequent fair trial if it results in "either a conviction on more serious counts or the imposition of a more severe sentence.")

When the defendant goes beyond mere allegations by presenting credible evidence that raises a substantial inference that another plea bargain was in fact negotiated, certainly the brevity of the "letter" does not justify totally disregarding them. The court may expand the record to include letters, documents, and affidavits. *Raines v. U.S.*, 423 F.2d 526, 529-530 (4th Cir. 1970). Notwithstanding the district court's ability to expand the record and its wide discretion in the matter, there will remain a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court. *U.S. v. Moya-Breton*, No. 12-4127 (10th Cir. 2013)

(unpubl). The letter from the attorney undercuts the district court's apparent understanding that there was no oral agreement for defense counsel to disclose. The letter's existence also suggests a need for an explanation from the government, which did not mention the agreement referred to in the letter in its response to Petitioner's § 2255 motion. Likewise, defense counsel should, perhaps, explain or clarify why she stated "Because one of the issues may involve questions regarding my representation, I cannot represent you in this matter".

It was alleged by the United States Court of Appeals in an order and Judgment entered November 14, 2012 that a miscalculation of erroneous sentence estimation by defense counsel is not constitutionally deficient performance rising to the level of ineffective assistance of counsel. If this is found to be true, then this honorable court does not acknowledge *Lafler v. Cooper* as well as *Missouri v. Frye* as being prongs for ineffective assistance of counsel.

The Petitioner argued that he was denied his right to effective assistance of counsel under the Sixth Amendment, and that he was prejudiced by his attorney's deficient representation. He also argues that, because of counsel's allegedly deficient performance, he did not knowingly and intelligently waive his right to trial by jury and to enforce the waiver

would result in a miscarriage of justice.

The Petitioner moves for an evidentiary hearing, to more fully develop the record on his ineffective counsel claim (by, for example, obtaining testimony from trial counsel). He argues that he is entitled to an evidentiary hearing because his § 2255 motion raised serious questions of fact regarding his ineffective assistance claim. Petitioner urges that the appellate and Supreme Court's decisions were based on an incomplete record and that the rejections of his Sixth Amendment ineffective assistance of counsel claims were therefore based on objectively unreasonable determinations of the fact.

The difficult question in this case relates to the scope of evidentiary hearings under both portions of § 2255. Petitioner first argues that, because the District Court held no evidentiary hearing to resolve contested issues of fact, the claims at issue here were not "adjudicated on the merits," as 2255 requires. Such deference "would be inappropriate because judgment on a materially incomplete record is not adjudication on the merits for the purpose of §2255. See also *Wilson v. Workman*, 577 F. 3d. 1284, 1293 (10TH Cir 2009) (*en banc*) ("To dispose of a claim without considering the facts supporting it is not a decision on the merits"). The court is mandated to answer each and every claim on the merits.

Petitioner's ineffective assistance of counsel claim had not been adjudicated on the merits because the counseling notes that formed the basis of the claim were not in the record before the 10th Circuit Court of Appeals. The District Courts acknowledged part of counsel's letter on the merits pertaining to filing an action under 28 U.S.C 2255 within one year of a final judgment. But also ignored the rest of the letter on outlining trial counsel's views as to her own performance, leaving the merits incomplete, when counsel for the record, Melanie S. Morgan, admitted giving defendant flawed advice regarding the plea agreement. This shows that counsel's performance fell below an objective standard of reasonableness where petitioner suffered prejudice as a result. This challenge is not to the advice pertaining to the plea that was accepted but rather to the course of legal representation that preceded it with respect to other potential pleas and plea offers.

Prosecutorial Misconduct:

It was noted by the Courts Sentencing Tr. Pg. 14, 15, Doc 122 (Judgment) that the way the robberies were treated under the advisory guidelines, they were grouped together. When the government found out this information he breached the agreement between counsel and defendant. The disposition of criminal charges by agreement between the prosecutor and the

accused, and the adjudicative element inherent in accepting a plea of guilty must be attended by safeguards to insure the defendant what is reasonably due in the circumstances, while the circumstances will vary, never the less, a constant factor is, "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. "*Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct 495, 30 L. Ed 2d 427.

The government's breach of promise that induced a guilty plea violates the due process rights of the defendant. See *United States v. Jensen*, 423 F. 3d 851, 854 (8th Cir. 2005). In the denial of petitioner's 2255 it was noted by the courts that defendant provides no evidence of this claim. In this 2255 motion petitioner provided the courts with evidence from counsel Melanie S. Morgan a letter stating, "I've asked the government to not oppose that motion hoping that Greg has the integrity to acknowledge what was agreed upon in negotiations but apparently poorly reflected in the plea agreement."

Counsel. Morgan, Criminal Chief/Supervisor Randy Hendershot and Assistant U.S. Attorney Gregory Hough signed and dated the plea agreement 7/16/09 (Doc. 98) that no other agreement exists. The letter from counsel undercuts the district court's apparent understanding that there was no oral

agreement for defense counsel to disclose. The letter's existence also suggests a need for an explanation from the government, which did not mention the negotiations referred to in the letter in it's response to petitioner's 2255 motion. See *United States v. Moya-Breton,* 439 F. App. at 713 (10th Cir 2013) (Unpublished)

In the Writ-of-Certiorari to the United States Supreme Court (pg 6) petitioner asserts that the government committed fraud during plea negotiations. Most importantly, the record of the plea proceedings in the case at bar reflects that both the government and counsel stated without conflict or equivocation that no other agreement had been made or promised directly or indirectly.

Here petitioner claims that the appellate waiver is invalid because he was misled about the underlying deal. Petitioner urges the court to take a "more holistic review" that goes beyond gauging the validity of the appellate waiver and that analyzed the entire plea agreement.

A defendant who claims that his guilty plea was not knowing and voluntary is entitled to have a reviewing court look at all the circumstances underlying the plea agreement, not just whether the defendant's waiver of the right to appeal is binding. The U.S. Court of Appeals for the Tenth Circuit ruled May 20, 2014 (*United States v. Rollings* 10th Cir. No:13-6014).

In the denial of petitioners 2255 motion 3/5/2012 (Doc) the courts ignored this critical piece of evidence from counsel of the record. After this order and judgment was rendered, petitioner submitted a "Motion to Withdraw" counsel (Doc 143) in which it was noted by the court: "Furthermore, in his 2255 briefing, petitioner attached a letter from his former counsel, in which counsel explained that she could not represent petitioner in his 2255." If the courts would have explained the full content of the sentence in this letter, it would have read: "Because one of the issues may involve questions regarding my representation, I cannot represent you in this matter".

Being that petitioner (1) received ineffective assistance of counsel in conjunction with the negotiation of the waiver, and (2) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Petitioner summarily argues that if this court determines his appeal is within the scope of the appeal waiver, then the waiver was not knowing or voluntarily entered and to enforce it would be a miscarriage of justice.

Here the courts tendency is "concerned only with the waiver…and ignore the root of which the waiver arose". The court suffers from "the tyranny of the final product". The court is so concerned with the petitioner's

waiver, it neglects learning the process of how it actually came about. Petitioner respectfully asks this honorable court to focus on the process of the entire course of this judicial proceeding. It's very rare when you see the court's avoid putting safeguards on fairness, integrity, and public reputation of judicial proceedings. Here the courts has turned a blind eye to all the misconduct that the government has done.

Petitioner also seeks review under Federal Rule of Crim Pro 52 (B):

Although Petitioner's advisory guidelines range was 121-151 months, the district court found that this was not enough time, by stating because the advisory sentencing guidelines counsel a range of time that is similar to the time that Mr. Dixon received for his prior conviction, and as the prosecutor points out, Mr. Dixon did serve a sentence of 123 months that did not seem to have much of an impact on him in terms of rehabilitation, In fact, he was at the halfway house on that sentence when he committed this string of robberies.

So to sentence him to a very similar term of incarceration does not at all seem to be sufficient for very significant course of criminal conduct. So in the court's mind, this is a situation that justifies an upward departure or variance under the language of the advisory sentencing guidelines and/or the sentencing statute 18 U.S.C. Section 3553. (Sentencing Tr. Pg's 24, 25)

(Doc 122) (Judgment)

The P.S.R. took into consideration the facts of the case, both is scoring what the offense was as well as scoring what the criminal history is. Petitioner's criminal history was taken in to consideration by three points for prior history, the recidivism enhancement for being in the halfway house at the time of the robberies with an additional three points. Which again, bumps up the criminal history.

At the change of plea hearing proceedings (Doc 117), the court addressed petitioner by stating, the point I just wanted to make to you, Mr. Dixon, is to the extent you all at sentencing are, you know, the government is advocating for a sentence or you're advocating for a sentence and you present evidence and there's some sort of dispute, I just want you to understand that will be something the court will decide. (Plea Hearing Tr. pg 13).

The courts asked U.S. Attorney, Mr. Hough, are there any victims here today for this proceeding? (Plea Hearing Tr. pg. 25). Mr. Hough goes on to state, No, there are not, your Honor. And for the record, we have contacted all four – Mike Pangburn, Paul Holstein, Suzanne Leonard, and Ramiro Gonzalez. All four have expressed a need, if you will, to be heard at the sentencing in this matter.

Here petitioner did not receive the right to confront and cross examine, and the right to a finding of guilt beyond a reasonable doubt, provide sufficient procedural safeguards to satisfy the reliability requirement that is at the heart of *Apprendi*. Here petitioner was not afforded all the procedural safeguards that he is constitutionally due and the District Court did not properly calculate this sentence pursuant to 18 U.S.C., Section 3553.

Another sentencing factor utilized under 3553 upward variance, the Courts stated, there was extreme conduct here outside the heartland of the guidelines in terms of the way the victims were treated. In the first three robberies of Dollar General and Tommy Meier Liquor Store, the clerks say that petitioner produced a firearm, demanded money and left the business. This is nowhere outside the heartland in terms of the way the victims were treated.

The Wood Oil robbery is where things start to get complex. The store clerk Suzanne Leonard told investigation officer's that petitioner robbed the place with an accomplice, that petitioner ordered the victim to give him all the cigarettes and money from the cash register. That petitioner walked the victim to the back of the store and ordered her to open the safe, cursed at her on two different occasions, ordered her to take off all her clothes, lie face down on the floor, went to the front of the store and got a second female

customer and made her disrobe as well.

The second victim said she was threatened that she would be raped. She said later that one of the robbers told her that he would kill her. There were screams and it was a very traumatic situation.

There was not a single piece of concrete evidence that either victim was disrobed, threatened to be killed or raped. What the government didn't want the Court to know, is that both victims had knowingly and deliberately lied to the investigation officers. The store clerk stated that when the petitioner took her to the back of the store and made her disrobe, that he touched the safe and that he didn't have gloves on. The police dusted for finger prints, as well as DNA and came up with a partial print that did not match Mr. Dixon's. The second victim told the Officer's that the robber's, after exiting the store, went to her car and took her purse along with money that she had just gotten paid earlier that day with. In the evidence presented to the government from the investigation officers, it was determined that, after the officers reviewed the video footage, neither robber went toward her car nor did anyone take her purse.

In the Gonzalez Liquor Store robbery, the store owner states that Mr. Dixon entered the store and demanded money. He tried to hand Mr. Dixon a stack of money that wasn't in the register and that the Petitioner demanded

the money that was in the register. Also, at the time of this robbery, the store owner's brother and his two year old son were in the store. The store owner then goes on to state that while the petitioner was robbing the place, his brother who has his two year old son with him, tried to hit petitioner with a bottle from behind the counter. He then goes on to state that a fight ensued between him, his brother and the petitioner, that his two victims wrestled with petitioner inside the store until he was able to exit the building. And that the fight continued outside the building between Dixon and the two victims and that the Petitoner struck both victims with the grip of a firearm, in the head. Eventually Petitoner dropped the weapon. Citizens in the area observed the fight and assisted the two victims while detaining Dixon until the Police Department arrived. In the evidence presented to the Government from the responding Officers, it was noted that there was no evidence of a fight inside the store, not a single piece of alcoholic beverage looked to be disturbed where they say a fight ensued. Also, there was a living quarters attached to this store, there was evidence that a fight took place outside the store, and that the so-called citizens who assisted the two victims until the police arrived, were in fact living in a house adjoined to the store that was owned by the brother's.

When the police arrived on the scene, the victims were asked where

the weapon was and used during the robbery. The owner went inside the store, came back out and produced a weapon, which was sent to the crime lab and was dusted for fingerprints and DNA. Neither victim's blood was found to be on the weapon, nor were petitioner's DNA or fingerprints found on the weapon. Both say they were hit on the head with this weapon, where the police say they were bleeding and had noticeable head wounds, and that one of them broke one of his fingers. Both victims refused medical treatment, as a matter of fact, the store owner's brother even refused to make a statement regarding what took place. The police found this very odd because the so called citizens who assisted until the police arrived denied to give a statement as well. The court's don't even know who these citizen's are nor how many it was. The troubling factor about this robbery is, the store owner's brother, who in a right frame of mind puts their two year old son in danger. The objective of a parent is to shelter their child from harm as best as possible, not to put them in harm's way, like the store owner says when his brother tried to hit the robber with a bottle while holding his son, in which he mis-quotes the store owner.

This is why the government in pre-plea negotiations offered to drop all counts 1-13 of the Superseding Indictment and only wanted Petitioner to plead guilty to Count 10 of the Indictment. 18 U.S.C. 922(g)(1). The

government thought that this count carried 15 years until counsel corrected him, that is when he tells counsel he agrees to the 10 years but, in order for Petitioner to get the 10 years he has to plea to all of the robbery counts. This is why counsel for the record states in a letter attached to Petitioner's §2255 brief that she hopes he has the integrity to acknowledge what was agreed upon in negotiations but poorly reflected in the plea agreement. The government never had proof beyond a reasonable doubt that the Petitioner committed these robberies. That is why the government denied Petitioner the right to cross-examine all for store clerks at sentencing.

The government told the courts that they all expected to be heard at sentencing (Plea Hearing Tr. 25) (Doc. 117). But, to prevent the Petitioner from opposing the statements of each victim he resorted to victim impact statements to have the court increase Petitioner's sentence.

The four victims say that they were traumatized in a way that affected their everyday way of life, along with anxiety attacks, emotional distress, as well as several other reasons. But no one produced a psychologist deposition, nor a doctor's report on these fact-finding allegations determined by the court.

These conditions were inadequately defined, confusing, vage and insufficiently tied to the general sentencing factors set out in 18 U.S.C.

3553. This demonstrates that the P.S.R. was materially untrue, inaccurate or unreliable and failed to sufficiently challenge witness testimony. The Petitioner has a right at sentencing to challenge the prosecutor's evidence if it is used to enhance his sentence. The loose allegations about the Petitioner's crime and criminal history were the factors the court used to enhance his sentence based on a need for rehabilitation.

The P.S.R. noted that during the period of incarceration, Petitioner had a string of disciplinary actions against him while in the Bureau of Prisons. On first reading this, it appears to be a difficult problem. But the record does not contain the Bureau of Prison's papers pertaining to the disciplinary hearing officer's determination. It does contain a description of the offense in the P.S.R., but that description is based on the incident reports. Incident reports are not authorized sources for fact-finding. They cannot be made a permissible source because they are referenced in a P.S.R. *United States v. Hays*, 526 F.3d 674 (10th Cir. 2008).

At the disciplinary hearing, an inmate does not have the right to counsel, nor the right to a finding of guilty beyond a reasonable doubt. There are not sufficient procedural safeguards to satisfy the reliability requirement that is at the heart of *Apprendi*. Here, the Petitioner faced a punishment that the law cannot impose on him.

Also, the constitutional protections to which juveniles have been held to be entitled have been designed with a different set of objectives in mind than just recidivist enhancements. So, the mere fact that a juvenile had all the process he was entitled to doesn't make his juvenile conviction equivalent, for purposes of recidivist enhancements, to adult convictions.

The statutory prohibition on a federal sentencing judge's reliance on a defendant's rehabilitative needs is violated whenever those needs were a factor in crafting the sentence, even if there were other factors as well. *United States v. Vandergrift*, No. 12-13154 (11th Cir. 2014).

The ruling places the court on one side of a deepening circuit split.

The court also ruled for the first time that the prohibition on considering rehabilitation applies not only at an original sentencing, but also at a sentencing following a revocation of supervised release.

A provision of the Sentencing Reform Act, 18 U.S.C. 3553(a) sets out the factors federal judges are to consider when imposing a sentence of imprisonment. In *Tapia v. United States*, 131 S. Ct. 2382, the Supreme Court held that another provision of this statute, Section 3582, bars sentencing judges from considering the need for rehabilitation in deciding whether and for how long to incarcerate defendants.

*Tapia* errors occur where the district court considers rehabilitation

when crafting a sentence of imprisonment. *Tapia* made clear that prison is not to be viewed by sentencing judges as rehabilitative. The Court said "and that holds true whether a person is initially being sent to prison or being sent back to prison." See, *United States v. Clay*, _____ F.3d _____ (7th Cir. 2014). Some circuits have interpreted Tapia as allowing consideration of a defendant's rehabilitative needs so long as those needs don't increase the length of the sentence. *United States v. Deen*, 706 F.3d 760 (6th Cir. 2013). However, consideration of such needs in this case was not consistent with the reasoning of *Tapia* as that court explicitly stated that judges determining whether to impose or lengthen a sentence of imprisonment should primarily consider the specified rationales of punishment and not rehabilitation, which it acknowledged was an unsuitable justification for a prison term. The Petitioner's sentencing court specifically considered the prohibited factors in violation of *Tapia*. (Sentencing Tr. 23-30).

Because this error was plain at the time of appellate review, the error is "plain" within the meaning of the rule and the reviewing court may consider the error even though it was not brought to the trial court's attention. F.R.Cr.P. 52(b); *Johnson v. United States*, 520 U.S. 461, 467-8 (1997). In this case, in fact, counsel objected to the sentence imposed as being substantively unreasonable. (Sentencing Tr. 35) Moreover, where

grounds for objection arise or are clarified *after* sentencing due to the articulation of a new rule of law, the courts may review the error for plain error. *Johnson, supra*, at 464-468; *United States v. Andrews*, 681 F.3d 509, 517 (3rd Cir. 2012).

Basing a sentence on impermissible factors is an example of substantive unreasonableness. *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). This too permits a review by the appellate courts for abuse of discretion.

WHEREFORE, for all of the reasons set forth above, Petitioner Dixon respectfully requests the Court grant him the relief prayed for herein.

Respectfully submitted,

LENARD DIXON, pro se

## CERTIFICATE OF SERVICE

I hereby certify that on _10/27/14_ , a copy of the foregoing Motion was mailed to the Respondent via prison mailbox.

LENARD DIXON

LeNard Dixon 07688-031
F.C.I
P.O. Box 33
Terre Haute, IN
47808

RECEIVED

OCT 3 1 2014

CLERK U.S. DIST. COURT
TOPEKA, KANSAS

Legal Mail

District Of Kansas
United States Courthouse
444 Southeast Quincy Street, Room 490
Topeka, KS 66683

**FEDERAL CORRECTIONAL COMPLEX**
**4700 BUREAU ROAD SOUTH**
**TERRE HAUTE, IN 87801**
DATE: ___ OCT 28 2014

AUTHENTICATION
CONFIRMED

The enclosed letter was processed through special mailing procedures for
forwarding to you. The letter has been neither opened nor inspected.
If the writer raises a question or problem over which this facility has
jurisdiction, you may wish to return the material for further information
or clarification. If the writer enclosed correspondence to be forwarded
to another individual, please return to the above listed address.

Legal Mail